DECISION
{¶ 1} Appellant, Walter Ramsey, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of burglary, two counts of receiving stolen property and one count of possession of criminal tools. Appellant sets forth the following assignment of error:
There was insufficient evidence to support Appellant's conviction and the conviction was against the manifest weight of the evidence.
 {¶ 2} Around 3:30 a.m., on October 31, 2003, Kristen and Brian Alexander awoke at the sound of breaking glass in their apartment at 360 Parkview Avenue and heard someone downstairs. Mr. Alexander called the police and was told that the police were on their way and would meet him at the back door. When the Alexanders went downstairs, they discovered a window was raised and the screen was missing. Also missing was Mrs. Alexander's purse containing cash, some credit cards and a cell phone, as well as a book bag containing school books and an iPod. Outside there was a shovel, that did not belong to the Alexanders, near the air conditioning unit. On the air conditioning unit was a footprint showing a circular pattern.
 {¶ 3} David Filipi lives at 557 Crestview Road and awoke suddenly around 4 a.m., on October 31, 2003. Looking out the bedroom window, Mr. Filipi saw a light move past the window. Mr. Filipi went downstairs and, looking out his front window, could see an individual he described to the police dispatcher as a stockily built African American wearing a dark coat and carrying a flashlight looking into windows of houses across the street. Mr. Filipi watched the individual until he disappeared between the house of Dr. Shahab Abdessalam and the house next door to the doctor. Mr. Filipi testified the area was well-lit from a street light almost in front of his house, as well as from a number of porch lights. Mr. Filipi was not able to identify the individual.
 {¶ 4} Dr. Shahab Abdessalam lives at 564 Crestview Road and he awoke at 4:00 a.m., on October 31, 2003, when his security alarm sounded. At first, Dr. Abdessalam saw nothing wrong in the house but then noticed that a screen was missing from a window in a room addition that was still under construction. About the time Dr. Abdessalam was going to call the police, the police arrived and found the back door unlocked. The police told Dr. Abdessalam that a man had been seen running from his backyard. Dr. Abdessalam and the police officer found the missing screen in the rear of a neighbor's yard. A video camera and a 35-millimeter camera belonging to Dr. Abdessalam were found in another neighbor's yard at 577 Tulane Road. Because work was still being done in the room addition, a number of footprints with a circular pattern were found in the dust.
 {¶ 5} Officer Jonathan Hall of the Columbus Police responded to a call of a prowler in the area and, when he arrived, the police helicopter was there. Officer Hall parked his cruiser in an alley that ran north off Crestview near the intersection of the alley that runs between Crestview and Tulane. Officer Hall testified that:
* * * So typically if there is someone that's doing something suspicious or up to no good, it's expected that they would try to hide from the helicopter. And normally that keeps them from moving. Our helicopters also normally have an infrared device. Might have seen it if you ever watch COPS or anything and so they can see people in the dark, they can see their body heat. They can see things that no one else can. Usually someone's going to hide.
I remember thinking to myself, well, I'm not going to see anyone here while the chopper is flying around, they're probably going to hide from it if there is someone up here. So when the chopper left — and they usually only stay for a few minutes — when they left and it got very, very quiet again, if someone is going to move it's going to be in the next few minutes if there's anyone up here.
(Tr. at 76-77.)
 {¶ 6} After the helicopter left the area, Officer Hall heard a burglar alarm then a period of silence. Officer Hall then heard a crunching sound of someone walking through leaves and an individual approached his cruiser, half jogging in the alley between Crestview and Tulane. Officer Hall turned his search light on the individual who he described as a male black wearing a dark coat. Officer Hall identified appellant as the person he saw. Officer Hall chased appellant and eventually found him pressed up against a fence between 567 and 573 Tulane. Officer Hall yelled at appellant who eventually turned around, threw two objects to the ground, later found to be brown gloves, and layed down. Near the fence where appellant was found, were the items taken from Mrs. Alexander's purse, although Officer Hall testified he never saw appellant in actual possession of these items.
 {¶ 7} Detective Michael Castle, with the Columbus Police Crime Search Unit, testified that 360 Parkview, the Alexanders' residence, and 564 Crestview, Dr. Abdessalam's residence, are a quarter to one-half mile apart. Detective Castle found footprints on the air conditioning unit at the Alexanders' residence, as well as footprints in the dust in the room addition at Dr. Abdessalam's residence. A further search of the area located Dr. Abdessalam's cameras in the rear of the yard at 577 Tulane, just across the alley from Dr. Abdessalam's residence, and the screen missing from the doctor's house was found at 570 East Crestview. In addition to the items taken from the Alexanders and the gloves appellant threw down, a flashlight was found in the area where appellant was arrested.
 {¶ 8} Officers Steven Steenburgh and James Fasone also arrived at the scene on Tulane in response to a call for assistance. After viewing the footprints found at Dr. Abdessalam's home, Officer Steenburgh removed appellant's shoes and gave them to a detective who put them on the hood of Officer Hall's cruiser. Officer Steenburgh saw Detective Castle pick the shoes up. Detective Castle testified appellant's shoes had a distinctive circular pattern and appeared similar to the pattern on the air conditioning unit at the Alexanders and in the dust at Dr. Abdessalam's home.
 {¶ 9} Officers Steenburgh and Fasone took appellant to police headquarters and Officer Steenburgh testified that, while being fingerprinted, appellant stated:
* * * And while we were preparing to have him fingerprinted, I can't remember the exact words offhand, but he made a comment just completely on his own, nobody was talking to him, he said something like I don't know why you got to do all this stuff, I always wear gloves. * * *
(Tr. at 154.) The parties stipulated that Officer Fasone did not recall appellant making such a statement.
 {¶ 10} In his sole assignment of error appellant argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant contends that his mere physical proximity to stolen property is insufficient to support his conviction; however, there was more evidence than just appellant's presence in the area and his arrest within feet of where some of the stolen property was recovered.
 {¶ 11} The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 12} When reviewing a trial court's decision to determine whether it is against the manifest weight of the evidence, a court of appeals is guided by the presumption that the findings of the trial court were correct. The rationale for the presumption is that the trial court is in the best position to view witnesses and observe their demeanor, voice inflections and gestures. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
 {¶ 13} While appellant is correct that no one saw him inside either residence, or with the stolen property in his possession, Ohio recognizes that circumstantial evidence and direct evidence possess the same probative value and circumstantial evidence is sufficient to prove the elements of a criminal case. Jenks. Thus, whether considering circumstantial or direct testimonial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Holland v. UnitedStates (1954), 348 U.S. 121, 140.
 {¶ 14} Here, the evidence shows both burglaries occurred in residences within a short distance of each other and within a short period of time of appellant's arrest. The Alexanders awoke about 3:30 a.m.; approximately one quarter to one-half mile away, Dr. Abdessalam awoke around 4:00 a.m., when his burglar alarm sounded. Mr. Filipi awoke shortly before 4:00 a.m., and saw someone looking into windows of houses across the street, and that person went between the home of Dr. Abdessalam and a neighbor. Within minutes of Dr. Abdessalam's burglar alarm going off, Officer Hall found appellant walking up the alley that runs behind Dr. Abdessalam's house and the house where some of the property was recovered. Dr. Abdessalam's cameras were found in the area where Officer Hall first saw appellant. Mrs. Alexander's property was found within feet of where appellant was found with his face pressed against a fence. Appellant's shoe prints appeared to match prints found at both the Alexanders' and Dr. Abdessalam's residences. While it was stipulated that Officer Fasone did not recall appellant stating that it was unnecessary to fingerprint him, as he always wore gloves, this does not support appellant's argument that Officer Fasone said he never heard the statement.
 {¶ 15} Based on the circumstantial evidence provided, we find appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.
Bowman, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.